IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SAUL GUZMAN, on behalf of himself and others similarly situated,<br>                Plaintiff,<br>v.<br>ABBEY ROAD CONTROL, INC.,<br>                Defendant | 3:20-cv-01877-JPW |

## BRIEF IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR APPROVAL OF FLSA SETTLEMENT

Plaintiff Saul Guzman ("Plaintiff") and Defendant Abbey Road Control, Inc. ("Defendant") have agreed to settle this Fair Labor Standards Act ("FLSA") lawsuit for $80,000 per the accompanying Collective Action Settlement Agreement ("Agreement"). *See* ECF No. 73-1. For the reasons described herein, Plaintiff submits that the settlement obtained is fair and reasonable and that therefore approval is warranted.

**I.     BACKGROUND**

Plaintiff initiated this case by filing a Complaint on October 12, 2020, asserting his FLSA claim as an opt-in collective action under 29 U.S.C. § 216(b) and his Pennsylvania Minimum Wage Act ("PMWA") claims as an opt-out class action under Federal Rule of Civil Procedure 23 on behalf of himself and other Flaggers who worked for Defendant. Complaint (ECF No. 1). Plaintiff alleges that he and other Flaggers were required to report to Defendant's Shop at the

beginning of the workday and then travel to their assigned construction site, and then return to Defendant's Shop from the assigned construction site at the end of the workday. *Id.* at ¶¶ 11-12. In determining overtime pay owed to Plaintiff and other Flaggers, however, Defendant did not count all the time traveling between Defendant's Shop and the construction site and back. And, even in when it did pay for some travel time, it only paid travel time at a straight time rate, instead of a time-and-a-half rate, in weeks when Plaintiff and other Flaggers work overtime. *Id.* at ¶ 13-15.

The Parties have stipulated that Plaintiffs' damages are limited:

> Plaintiffs' claim for unpaid overtime wages under the Fair Labor Standards Act ("FLSA") and the Pennsylvania Minimum Wage Act ("PMWA") is limited to time attributable to travel between Defendant's shop and Plaintiffs' assigned job location. Such allegedly compensable travel time includes both (i) travel time included in Plaintiffs' Payroll Check Register data for which Defendant already paid a straight-time rate and (ii) allegedly uncompensated travel time not included in Plaintiffs' Payroll Check Register data.

ECF No. 49. In July 2021, the Court "conditionally certified" an FLSA collective comprised as "all individuals employed by Defendant as flaggers within three years of the entry of this order" and set a schedule for mailing the approved notice to putative collective members. ECF No. 22. In response to the notice, 56 Flaggers have joined Guzman and opted in to this case as Plaintiffs. *See* ECF Nos. 27-34, 37.

Discovery ensued. Specifically, the Parties exchanged written requests and responses, and Defendant produced payroll records for Plaintiffs, among other documents. Plaintiff deposed one of Defendant's employees, Rachel Wech. In total, 18 Opt-In Plaintiffs responded to Defendant's Interrogatories.

Plaintiffs filed their Motion for Final Certification of the Fair Labor Standards Act Collective on December 16, 2022, ECF No. 51; and filed their supporting brief on December 22, 2022, ECF No. 52. Defendant filed an opposition on December 29. 2022, and Plaintiffs filed a reply on January 6, 2023. ECF Nos. 55, 56. The Parties thereafter reached an agreement to settle this matter.

As indicated in the Agreement, the settlement requires Defendant to pay a total of $80,000. If the Court approves the requested $30,000 in attorney's fees and expenses, the remainder of the settlement fund will be allocated to Plaintiffs as set forth in Exhibit A to the Agreement. *See* Agreement, ECF No. 73-1, at ¶ 5 & Ex. A. In order to receive their settlement payments, Plaintiffs will be required to execute a limited release covering all claims "either asserted in or reasonably related to the Action." *Id.* at ¶ 4.[1]

---

[1] If the Court approves the settlement, each Opt-In Plaintiff will be e-mailed and mailed an individualized Release Form, and a postage-paid return envelope that the employee can use to return the Release Form to W&S. *See* Agreement (ECF No. 73-1) at p. 3 & Ex. B.

## II.   ARGUMENT

Plaintiff submits that approval of the settlement is warranted for the following reasons:

### A.   The Settlement May Be Approved in a Single Step.

Unlike class action settlements under Federal Rule of Civil Procedure 23 that involve a two-step court approval process, courts routinely approve FLSA settlements in one step.  As our Court of Appeals recently explained:

> Rule 23 also contains important post-certification protections that are notably absent in [FLSA] § 216(b). Because absent class members are not present in court, the court is authorized to issue various orders "to protect class members and fairly conduct the action."  Fed. R. Civ. P. 23(d)(1)(B). The FLSA does not provide any analogous authority.  Rule 23 also establishes a rigorous system surrounding the settlement of class actions in which absent class members are notified and provided an opportunity to opt-out and to object. Fed. R. Civ. P. 23(e).  And before approval of the settlement, the court must conduct a hearing and find "it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  ***Once again, FLSA collective actions contain none of these protections.***  See 29 U.S.C. § 216(b); McLaughlin on Class Actions § 2:16 ("Unlike class actions, which cannot be settled without notice to absent class members under Rule 23(e), a collective action may be settled without notice to absentee members.").

*Fischer v. Federal Express Corp.*, 42 F. 4th 366, 377 (3rd Cir. 2022) (emphasis added); *see also Haskett v. Uber Techs., Inc.*, 780 Fed. Appx. 25, 27 (4th Cir. 2019) ("Unlike Rule 23, section 216(b) does not require a district court to notify potential claimants about a proposed settlement.").  Consistent with the above, this Court often reviews FLSA collective settlements in a single step.  *See, e.g., Skaggs v. Gabriel Bros.*, 2021 WL 2184769, 2021 U.S. Dist. LEXIS 101044, (M.D. Pa.

May 28, 2021) (Wilson, J.); *Sheridan v. Scranton Quincy Ambulance, LLC*, 2020 U.S. Dist. LEXIS 186032 (M.D. Pa. Oct. 7, 2020); *see also Goncalves v. AJC Constr. Inc.*, 2022 WL 2985636, 2022 U.S. Dist. LEXIS 133995 (E.D. Pa. July 28, 2022).[2]

    **B.**    **Approval of the Settlement is Warranted.**

While the Third Circuit Court of Appeals has not addressed whether parties can settle FLSA suits for unpaid wages without court approval, "district courts within the Third Circuit have followed the majority position and assumed that judicial approval is necessary." *Skaggs*, 2021 U.S. Dist. LEXIS 101044, at *3. An FLSA settlement warrants approval when it constitutes "'a fair and reasonable resolution of a bona fide dispute over FLSA provision,'" and does not "'impermissibly frustrate[]' the implementation of the FLSA." *Kane v. Ollie's Bargain Outlet Holdings, Inc.*, 2022 U.S. Dist. LEXIS 31113, at *3-4 (M.D. Pa. Feb. 22, 2022) (Wilson, J.) (citations omitted); *accord Gee v. Port Pizza, LLC*, 2021 WL 919915, 2021 U.S. Dist. LEXIS 44643, at *3 (M.D. Pa. Mar. 10, 2021); *Mishra v. Intra-National Home Care LLC*, 2019 WL 5595671, 2019 U.S. Dist. LEXIS 187740, ,*4 (M.D. Pa. Oct. 30, 2019); *Skaggs*, 2021 U.S. Dist. LEXIS

---

[2]    *Accord Lauture v. A.C. Moore Arts & Crafts, Inc.*, 2017 U.S. Dist. LEXIS 87928, *2-3 (D. Mass. June 8, 2017) (endorsing one-step approval of collective settlements); *Koszyk v. Country Financial*, 2016 WL 5109196, 2016 U.S. Dist. LEXIS 126893, *2-3 (N.D. Ill. Sept. 16, 2016) (same).

101044, at *3-4; *Sheridan*, 2020 U.S. Dist. LEXIS 186032.  Here, these criteria are satisfied:

### 1. The Settlement Resolves a Bona Fide FLSA Dispute.

A *bona fide* dispute exists when the parties dispute "whether Plaintiffs worked overtime, were entitled to overtime compensation . . . ." *Skaggs*, 2021 U.S. Dist. LEXIS 101044, at *4.  Such is the case here.  Defendant has retained able counsel and filed an answer denying liability and asserting various affirmative defenses.  *See generally* Answer (ECF No. 12).  Defendant also opposed Plaintiff's request to grant final certification of the collective in this case, asserting, among other things, that individualized defenses may render the collective dissimilar.  *See generally* ECF No. 55.

### 2. The Settlement "Furthers the FLSA's Implementation."

Generally speaking, in reviewing FLSA settlements, "[t]here is 'broad consensus' that FLSA settlement agreements should not be kept confidential." *Skaggs*, 2021 U.S. Dist. LEXIS 101044, at *6 (quoting *DiClemente v. Adams Outdoor Advert., Inc.*, 2016 U.S. Dist. LEXIS 88394, at *4 (M.D. Pa. July 8, 2016)).  The settlement here avoids such pitfalls.  It is publicly filed, *see* ECF No. 73-1, and the "confidentiality" provision is narrowly tailored to merely prevent the employees and undersigned counsel from publicizing the settlement to the news media or via social media.  *See id*. at ¶ 9.  This type of limited confidentiality provision does not frustrate the FLSA's purpose.  *See, e.g., Brown v. Lyndon City*

*Line Diner, Inc.*, 2021 WL 3492990, 2021 U.S. Dist. LEXIS 148473, *5-6 (M.D. Pa. Aug. 9, 2021); *Skaggs*, 2021 U.S. Dist. LEXIS 101044, at *6-7 (confidentiality provision that "only prohibits Plaintiffs from disclosing the contents of the settlement agreement to a press release, press inquiry, or website or public social media posting" did not "frustrate the implementation of the FLSA.").

Moreover, the release is strictly limited to legal claims "asserted in or reasonably related to the Action." Agreement at ¶ 4. Such limited releases do not frustrate the FLSA. *See, e.g., Shabazz v. Colonial Park Care Ctr.*, 2021 WL 4860770, 2021 U.S. Dist. LEXIS 201431, at *11-12 (M.D. Pa. Oct. 19, 2021) (approving release "specifically tied to the plaintiffs' FLSA claims and their state law analogues"; explaining that because release is "closely tied to the claims set forth in the complaint, it avoids the dangers cited by courts when confronted with global releases."); *Devine v. Northeast Treatment Ctrs.*, 2021 WL 4803819, 2021 U.S. Dist. LEXIS 197924, at *16, 21-23 (E.D. Pa. Oct. 14, 2021).

### 3. The Settlement is "Fair and Reasonable."

Finally, the settlement is "fair and reasonable." By Plaintiff's calculation, the settlement payment[3] represents: (i) *all* travel time included in Plaintiffs'

---

[3] This gross recovery figure includes attorney's fees. In evaluating a settlement's fairness, "'the relevant settlement amount is the total amount of the settlement even though the total settlement amount includes attorney's fees.'" *Devine*, 2021 U.S. Dist. LEXIS 197924, at *5 (quoting *Solkoff v. Pa. State Univ.*, 435 F. Supp. 3d 646, 655 (E.D. Pa. 2020).

Payroll Check Register data for which Defendant already paid a straight-time rate; and (ii) an additional 5 hours of uncompensated travel time per week not included in Plaintiffs' Payroll Check Register data.  As explained in Plaintiffs' Motion for Final Certification, according to Defendant's witness, Rachel Wech, Defendant's policy was to pay only for travel between Defendant's Shop and the job site if the travel time exceeded an hour each way.  *See* ECF No. 52 at 4.  Based upon this policy and the estimates of travel time provided by Plaintiffs who responded to discovery, Plaintiffs' allocation assumes that Plaintiffs were not paid for an additional 1 hour of travel time each shift in a workweek.  The settlement also includes a minimum allocation of $200 to Opt-In Plaintiffs who – according to Defendants' records – worked little to no overtime weeks during their employment with Defendant and therefore have minimal damages.[4]  In the opinion of the undersigned counsel, the settlement represents an excellent recovery for the Plaintiffs.

---

[4]    Defendant did not produce payroll records or time records for Opt-In Plaintiff Stanback, and only produced time records for Opt-In Plaintiff Houseknecht.  Plaintiffs' Counsel was also unable to confirm with Opt-In Plaintiff Stanback his estimated weeks, hours worked, or pay rates to calculate his estimated wages due; accordingly, he will receive a minimum award of $200 under the settlement.  For Plaintiff Houseknecht, her award is based on overtime weeks worked according to Defendant's time records coupled with her recollection of travel time hours.  Where, as here, an employer lacks payroll records, this method of calculating back wages is permissible.  *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946).

In addition, the $2,500 Service Award sought by Plaintiff Guzman is reasonable. In class/collective litigation, service award payments "compensate named plaintiffs for the services they provided and the risks they incurred during the course of litigation, and to reward the public service of contributing to the enforcement of mandatory laws." *Sullivan v. DB Invests., Inc.*, 667 F.3d 273, 333 n. 65 (3d Cir. 2011). Service awards "are particularly appropriate in the employment context." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187-188 (W.D.N.Y. 2005); *see also Shabazz*, 2021 U.S. Dist. LEXIS 201431, at *10 ("[i]ncentive payments play an important role in FLSA litigation.").

Here, the requested service award is warranted and well within the range of service awards approved by courts in this district and elsewhere in FLSA cases. *See, e.g., Shabazz*, 2021 U.S. Dist. LEXIS 201431, at *11 (approving $5,000 service award as "fair, reasonable, and consistent with awards previously approved in other, similar cases."); *Sheridan*, 2020 U.S. Dist. LEXIS 186032, at *2 (approving $6,000 payment to named plaintiff as "within the range of awards approved in other FLSA actions."). Throughout this litigation, Guzman has been a diligent advocate for himself and others. He has been in regular contact with the undersigned counsel, has provided counsel with valuable information, attended an all-day mediation session with Magistrate Judge Carlson, and has supported a settlement that pays him *less* than many other Opt-In Plaintiffs.

In sum, the above payments are "fair and reasonable."

4.       **Approval of the Attorney's Fees/Expenses is Warranted.**

Finally, courts reviewing FLSA settlements must ensure that the attorney's fees and expenses paid to counsel are reasonable.  *See*, *e.g.*, *Sheridan*, 2020 U.S. Dist. LEXIS 186032, at *2; *Gravely v. PetroChoice, LLC*, 2022 WL 2316174, 2022 U.S. Dist. LEXIS 113746, at *5-6 (E.D. Pa. June 28, 2022).  Here, the settlement contemplates a payment to Winebrake & Santillo, LLC ("W&S") of $30,000 for all attorney's fees and expenses.  *See* Agreement at ¶ 6.  After reducing this amount by the $402 federal court filing fee incurred by W&S, notice administration costs, and deposition transcript costs, *see* Declaration of Deirdre Aaron ("Aaron Decl.") (ECF No. 73-2) at ¶ 30, the requested attorney's fee constitutes approximately 35% of the $80,000 settlement fund.  This fee falls well within the range of fees approved by federal judges in other wage and hour settlements.  *See*, *e.g.*, *Goncalves*, 2022 U.S. Dist. LEXIS 133995, at *9-10 (fee of "slightly less than 36 percent of the total recovery . . . is a reasonable amount in FLSA cases"); *Gravely*, 2022 U.S. Dist. LEXIS 113746, at *5 (35% fee "in line with fee awards by courts in the Third Circuit").

Importantly, W&S's fee recovery falls well ***below*** the firm's fee lodestar. *See* Aaron Decl. (ECF No. 73-2), at ¶ 29.  This further demonstrates the fee's reasonableness.  *See Shabazz*, 2021 U.S. Dist. LEXIS 201431, at *15 ("[w]e are also persuaded of the reasonableness of th[e] proposed fee award when we

consider that this negotiated attorneys' fee award is a significant reduction below the actual lodestar fees claimed to be incurred in the prosecution of this case.").

### III. CONCLUSION

For the reasons set forth above, Plaintiff requests that the Court grant this motion and approve the settlement of this action.

Date:  March 3, 2023                                        Respectfully submitted,

                                                             /s/ Deirdre Aaron
                                                            Pete Winebrake (PA ID No. 80496)
                                                            pwinebrake@winebrakelaw.com
                                                            Deirdre Aaron (PA ID No. 323389)
                                                            daaron@winebrakelaw.com
                                                            WINEBRAKE & SANTILLO, LLC
                                                            715 Twining Road, Suite 211
                                                            Dresher, PA 19025
                                                            (215) 884-2491

                                                            *Attorneys for Plaintiffs*